Eric Dewayne **CATHEY**, Appellant,

v.

The **STATE** of Texas

No. 72772.

Court of Criminal Appeals of Texas, En Banc.

April 21, 1999.

Rehearing Overruled June 16, 1999.

Karen Zellars, Spring, for appellant.

Kelly Ann Smith, Assist. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

KELLER, J. delivered opinion of the Court in which McCORMICK, P.J. and MANSFIELD, PRICE, HOLLAND, WOMACK and KEASLER, JJ., joined.

Appellant was convicted in March of 1997 for a capital murder committed in September 1995. TEX. PENAL CODE ANN. § 19.03(a). The jury's verdicts required the trial court to sentence appellant to death. TEX. CODE CRIM. PROC. art. 37.071

§ 2.[1] Appeal from the sentence of death is automatic to this Court. *Id*; TEX. CONST. Art. I, § 5. Appellant raises thirteen points of error. We will affirm.

### 1. Sufficiency of the evidence

In his first three points of error, appellant avers that the evidence is legally and factually insufficient to corroborate accomplice testimony as required by Article 38.14. On September 12, 1995, Christina Castillo, a twenty-year old Houston resident, disappeared. Her body was found on September 24, 1995 in a desolate area of Houston by a family searching for aluminum cans. Her eyes had been covered, and her wrists and feet were bound with duct tape. The evidence indicated the body had been exposed for four or five days. The autopsy revealed that Christina had been killed by three gunshot wounds to the head. Three cartridge cases were recovered from the scene. The crime scene revealed no direct evidence of the murderer's identity.

In January of 1996, Houston police detectives got a break in the unsolved Castillo murder when Texas Ranger Jesse Mack informed them that James DeLeon had provided information about the murder. DeLeon provided a detailed confession asserting that he and five other men, Sonny Baker, Lionel Bonner, Anthony Riley, Patrick Brooks (known as P.B.), and appellant had planned to rob Castillo and her boyfriend, Hector Alicia, believing that the couple possessed drugs and money. DeLeon asserted that appellant had murdered Castillo. Bonner also provided the police with a statement. DeLeon did not testify at trial but Bonner did. It is Bonner's testimony which applicant argues is uncorroborated.

At trial Bonner testified that the six conspirators laid plans to rob a Hispanic couple who were Brooks' neighbors and

---

**1.** Unless otherwise indicated all future references to Articles are to the Texas Code of Criminal Procedure.

who the conspirators believed had drugs and money in their apartment. Appellant was armed with a gun; he was apparently the only one armed. When the conspirators found Castillo, she was driving up to her apartment. Appellant grabbed her by the throat and held her at gunpoint, forcing her into a red car. The conspirators were in two vehicles: the red car and a white van. Appellant instructed everyone to meet at his mother's house. Castillo was restrained with duct tape. At appellant's mother's house, the six men interrogated Castillo about the drugs and money. She denied any knowledge of drugs or money. Riley struck her, but she continued to deny knowing anything about drugs or money. Baker began beating and kicking her. She continued to deny any knowledge and informed the conspirators that she was pregnant. At some point she fell to the floor and appellant began kicking her. Baker, Riley, and appellant continued to assault Castillo for some fifteen minutes. Castillo continued denying any knowledge about drugs or money. The conspirators decided to abandon Castillo and took her to a desolate location. As Riley, Bonner, and DeLeon began to drive away from the location, Riley told Brooks to leave Castillo there, but as they drove away Bonner heard several gunshots. Later that night appellant told Bonner that he had shot Castillo, but offered no explanation. A few weeks later, appellant again told Bonner that he had shot Castillo and said that he did not know why. Appellant produced a photograph of Castillo which he had taken from her purse and which he carried in his wallet as a memento.

■ Under Article 38.14, a conviction cannot stand on accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the offense; the evidence is insufficient if it proves merely the commission of the offense. *Colella v. State,* 915 S.W.2d 834, 838–39 (Tex.Crim.App.1995). It is not necessary that the corroborating evidence directly connect the defendant to the crime or that it be sufficient by itself to establish guilt; it need only tend to connect the defendant to the offense. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App.1988). If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of Article 38.14 has been fulfilled. *Gosch v. State,* 829 S.W.2d 775, 777 (Tex.Crim.App. 1991).

■ Contrary to appellant's assertions, the record contains more than sufficient evidence to meet the corroboration requirement of Article 38.14. One witness, Mark Young, testified that, one month after Castillo's murder, he encountered a stranger, whom he identified as appellant, at a gas station and that he acquired a gun from appellant. Robert Baldwin, a criminologist with the Houston Police Department, testified that he analyzed the gun which Young took from appellant and compared it to the fired bullet and three spent casings found with the victim. Baldwin testified that the bullet was fired from the gun and the cartridges came from the same gun. Another witness, Pauline Blackshear, testified that appellant had told her before his arrest that he was "wanted for murdering some Spanish girl." Finally, David Perro testified that appellant told him that he, P.B., Bonner, and DeLeon had been "together when the bitch got shot."

■ Appellant argues that this evidence might establish that the offense was committed, but not that he committed the offense. According to appellant the tendency of this evidence to connect him to the offense is too "weak and uncertain when considered in connection with the State's burden of proving the accused's guilt beyond a reasonable doubt." We decline appellant's invitation to impose legal and factual sufficiency standards upon a review of accomplice witness testimony under Article 38.14. The accomplice witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the le-

gal and factual sufficiency standards. *See Malik v. State*, 953 S.W.2d 234, 240 n. 6 (Tex.Crim.App.1997).[2] The burden established by the Legislature is that there be

2. As we have noted however, the State's failure to sufficiently corroborate accomplice testimony in accordance with the statute results in the remedy of acquittal. *Id.* This result is not required by the federal constitution, but by state statute: "In all cases where, by law, two witnesses, *or one with corroborating circumstances,* are required to authorize a conviction, *if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction.*" Article 38.17 (emphasis added). *See Ex Parte Reynolds*, 588 S.W.2d 900, 902 (Tex. Crim.App.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980).

3. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by *other evidence tending to connect* the defendant with the offense committed; and the corroboration *is not sufficient if it merely shows the commission of the offense.*" Article 38.14 (emphasis added).

4. Judge Meyers contends that we have inappropriately "divorced" a sufficiency review under the statutory accomplice witness rule from "any federal constitutional principles." But the accomplice witness rule has never been wedded to federal constitutional principles. This Court has consistently maintained that the accomplice witness rule "is required by neither common law nor constitution" but "simply reflects a legislative determination that accomplice testimony that implicates another should be viewed with some level of caution." *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994)(citing *Thompson v. State*, 691 S.W.2d 627, 631 (Tex.Crim.App. 1984) and *Paulus v. State*, 633 S.W.2d 827, 843 (Tex.Crim.App.1982). And as discussed above, we recognized the accomplice witness rule's non-constitutional status in *Malik*.

As for the cases cited by Judge Meyers as holding that this Court reviews an accomplice witness/insufficiency claim "in the light most favorable to the verdict," none of those cases actually holds that such is required; they simply *discuss the evidence* in the light most favorable to the verdict. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997); *Knox v. State*, 934 S.W.2d 678, 683–687 (Tex. Crim.App.1996); *Colella v. State*, 915 S.W.2d 834, 836 (Tex.Crim.App.1995); *Gill*, 873 S.W.2d at 48. This tendency to list the evidence "in the light most favorable to the verdict" may stem from the fact that such is

other evidence *tending to connect* the defendant with the offense.[3] The State has met that burden.[4] Points of error one through three are overruled.

routinely required for legal sufficiency reviews under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Knox*, for instance, involved both the federal *Jackson* review and an accomplice witness sufficiency review. *See Knox*, 934 S.W.2d at 683 & 686. Further, since the accomplice witness statute simply requires "other" evidence, which we have interpreted to mean "*some* nonaccomplice evidence," *Hernandez*, 939 S.W.2d at 176, it is difficult to see any practical difference between the statutory standard and reviewing evidence "in the light most favorable to the verdict." Nevertheless, such statements do not in any way ground the accomplice witness rule upon federal constitutional principles.

Nor does the accomplice-witness rule's remedy of acquittal show that the accomplice-witness sufficiency review is based upon federal constitutional principles. As discussed in footnote 2 of this opinion, the remedy of acquittal was provided by the Legislature in Article 38.17. Judge Meyers contends that in *Reynolds* we held that an acquittal was mandated under *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1977) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1977) and that the emphasis of our opinion was on *Burks* and *Greene.* Those cases, however, are concerned with the double jeopardy effects of a finding of insufficient evidence; they were not concerned with the mechanics of a sufficiency review. *Burks*, 437 U.S. at 17, 98 S.Ct. 2141 ("[T]his is not the appropriate occasion to re-examine in detail the standards for appellate reversal on grounds of insufficient evidence"). Moreover, referring to Article 38.17, we stated that "under *statute*, insufficient evidence to corroborate an accomplice witness requires a verdict of acquittal." *Reynolds*, 588 S.W.2d at 902 (emphasis added). The double jeopardy principle in *Burks* and *Greene* applied *only* because the Legislature had provided the remedy of acquittal for insufficient evidence under the accomplice-witness rule: "In *this jurisdiction*, when evidence is insufficient to corroborate an accomplice witness, the jury cannot properly return any verdict except an acquittal. We *therefore* hold that the *Burks–Greene* rule does apply...." *Reynolds*, 588 S.W.2d at 902 (emphasis and ellipsis added).

Further, similar observations have been made by the Fifth Circuit and at least one scholarly treatise. The Fifth Circuit has called the accomplice-witness rule a "state-

### 2. Intimidation of defense witness

■ In point of error four, appellant argues that the trial court violated his due process rights by coercing and intimidating DeLeon into refusing to testify on appellant's behalf. Citing *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), appellant argues that the judicial admonishments to DeLeon in fact were so "unnecessarily strong" and "exerted such duress on the witness's mind as to preclude him from making a free and voluntary choice whether or not to testify."

In *Webb*, the State had rested when the defendant called its sole witness. The trial judge not only warned the witness of his right to refuse to testify and of the necessity to tell the truth, but the trial judge implied in strong language that he expected that the witness, who he knew had a prior criminal record and was serving a prison sentence, would lie. The trial court went on to assure the witness that if he lied, as expected, he would be prosecuted and probably convicted for perjury and that the sentence for the perjury conviction would be added to his present sentence and that it would impair his chances of parole. The Supreme Court held that such threatening remarks had effectively driven the witness off the stand and de-

prived petitioner of due process. 409 U.S. at 97–98, 93 S.Ct. 351.

In this case, after the State rested, the defense called appellant's accomplice, DeLeon, who was then in custody and awaiting trial on charges arising from this offense. The court was under the impression that DeLeon would assert a Fifth Amendment privilege and was concerned that DeLeon's attorney was not present in court. When DeLeon took the stand, the trial court noted for the record that DeLeon's attorney was not present, that DeLeon had not been satisfied with merely speaking to his counsel's associate and that DeLeon had been given the opportunity to speak with his counsel over the telephone. DeLeon was sworn in and then the following transpired:

THE COURT: Could you state your name for the Court.

MR. DELEON: James DeLeon.

THE COURT: And you are currently charged with the offense of aggravated kidnapping in this case; is that correct?

MR. DELEON: Yes, sir.

THE COURT: Your case is pending, is scheduled for trial March 24th, I believe?

MR. DELEON: Yes, sir.

---

law requirement" that "has no independent constitutional footing." *Thompson v. Lynaugh*, 821 F.2d 1054, 1062 (5th Cir.), *cert. denied*, 483 U.S. 1035, 108 S.Ct. 5, 97 L.Ed.2d 794 (1987). For this reason, violations of the accomplice-witness rule are not cognizable on federal habeas corpus review, and "*Jackson*, which instructs us to look at the 'substantive elements of the criminal offense as defined by state law' does not counsel to the contrary." *Brown v. Collins*, 937 F.2d 175, 182 n. 12 (5th Cir.), *rehearing en banc denied*, 945 F.2d 403 (5th Cir.1991) (citation omitted). While acknowledging that caselaw is unclear on the subject, Professors Dix and Dawson have opined that federal sufficiency standards have no application to a sufficiency review pursuant to the accomplice-witness rule:

Most likely, then, the *Jackson v. Virginia* standard is irrelevant to the accomplice witness corroboration requirement itself. The corroborating evidence must simply— in some general, perhaps "significant,"

way—as a matter of logical relevance tend to show that the accused was involved in the behavior constituting the charged offense.

DIX & DAWSON, TEXAS PRACTICE AND PROCEDURE, Vol. 42, § 31.201, p. 273 (1995).

While Judge Meyers' perception of the matter may be understandable in light of some loose and confusing language in some of our past caselaw, the present case illustrates the need to explain clearly the nature of the accomplice witness rule and the standards that govern it. And finally, applicant asks not only for the application of principles found in *Jackson* but also for those announced in *Clewis*, in defining a factual sufficiency review. Attempts to apply *Clewis* to the accomplice-witness sufficiency review flow naturally from the misapprehension that other sufficiency standards, such as those announced in *Jackson*, have any relevance to a review of the evidence under Article 38.14.

THE COURT: The Defense intended, or was requesting to call you as a witness in this case. After talking with Mr. Morris, do you intend to testify in this trial?

MR. DELEON: Yes.

THE COURT: All right.

MR. LEITNER: May I have a moment, your Honor? (Whereupon, Mr. Leitner, DeLeon's counsel's associate, speaks with Mr. DeLeon.)

THE COURT: All right. Mr. DeLeon, you understand that any testimony that you give in this trial can be used against you in your pending trial?

MR. DELEON: Yes, sir, I understand that.

THE COURT: And I will be honest, when I came out here I was under the impression that you were not going to testify, that you were going to claim the Fifth Amendment privilege.

MR. DELEON: Well, your Honor, I was, but you know, there's something that I have to get off my chest.

THE COURT: I don't need to know the reasons as to why you're doing what you are doing. I just need to know that you have counseled with your lawyer, that you understand that Mr. Morris is not going to be here, that even if he were, there's nothing that he could do other than sit there and watch you testify, that you don't have the right to have him come up and counsel you in regards to any questions that may be asked by either side in this case. If you agree to testify, then you have no privilege anymore at that time. So, anything you're asked you would be required to answer. And if you fail to answer, you will be subject to contempt of this court. Now, having talked to Mr. Morris and having talked to Mr. Leitner, do you now tell this Court and these lawyers that you intend to testify in this case?

MR. DELEON: Yes, sir.

(Whereupon, Mr. Leitner speaks with Mr. DeLeon.)

THE COURT: Do you have any questions of the Court?

MR. DELEON: No, sir.

THE COURT: All right. You can put him [on] and we will get started later this morning.

(Recess.)

THE COURT: For the record, James DeLeon has taken the witness stand again. And Mr. DeLeon, have you come to a different conclusion in regards to your testimony at this time?

MR. DELEON: Yes, I have.

THE COURT: What is that conclusion now?

MR. DELEON: I'm going to plead the Fifth.

THE COURT: All right. Is it your statement now that you do not wish to testify in this matter?

MR. DELEON: Yes, sir.

THE COURT: All right. You may stand down. And Mr. Leitner, you are excused.

These facts are not comparable to those in *Webb* as they reveal neither "unnecessarily strong terms" nor "exertion of such duress" as to "preclude the witness from making a free and voluntary choice whether or not to testify." 409 U.S. at 98, 93 S.Ct. 351. To the contrary, the record reveals that the trial judge employed admirable caution in assuring that if the witness, who was a criminal defendant potentially facing the death penalty and whose attorney was not present, decided to waive his right not to incriminate himself, the waiver was made intelligently and voluntarily. Point of error four is overruled.

### 3. Parties instruction

In point of error five, appellant avers that the trial court committed fundamental charge error, resulting in egregious harm, by charging the jury under the law of parties when the evidence supported only a charge of liability as the primary actor. In point six, appellant avers that the trial

court erred in instructing the jury that it could find appellant guilty as a party to Bonner's, DeLeon's or Riley's conduct, when it is clear from the evidence that none of these men could have actually shot the victim.

■ We shall assume, without deciding, that error occurred and turn to the question of harm. Appellant did not object at trial that a parties charge should not have been submitted at all; therefore, to prevail on his fifth point of error, he must show egregious harm. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). Appellant did object at trial on the bases alleged in his sixth point of error; hence, to prevail on that point appellant must show some harm. *Id.* Appellant, however, has failed to demonstrate any harm.

■ Evidence that appellant acted as a principal came from the accomplice Bonner, who also testified that appellant helped plan the offense. As noted in the discussion of points of error one through three, there was also non-accomplice testimony which tended to link appellant to the offense. Even where proper objection is made at trial, we have held that where, as in the instant case, the evidence clearly supports a defendant's guilt as the primary actor, error in charging on the law of parties was harmless. *Black v. State*, 723 S.W.2d 674, 675 & 676 n. 2 (Tex.Crim.App. 1986); *Govan v. State*, 682 S.W.2d 567, 570–571 (Tex.Crim.App.1985). If, as appellant claims, guilt as a party would be an irrational finding under the evidence, then it is highly unlikely that a rational jury would base its verdict on a parties theory. Having failed to show harm, appellant also has failed to show egregious harm. Points of error five and six are overruled.

### 4. Constitutionality of death penalty scheme

In his remaining complaints, points of error seven through thirteen, appellant attacks the constitutionality of Article 37.071 on various grounds indistinguishable from similar arguments which this Court has repeatedly heard and rejected. In point of error seven, appellant argues Article 37.071 is unconstitutional because it fails to assign a burden of proof to the mitigation special issue. This argument has previously been foreclosed. *E.g. Eldridge v. State*, 940 S.W.2d 646, 654 (Tex.Crim.App. 1996); *Morris v. State*, 940 S.W.2d 610, 614–15 (Tex.Crim.App.1996). In point eight, appellant argues the prohibition against informing the jury of the consequences of its failure to reach an agreement on the mitigation special issues renders Article 37.071 unconstitutional. This argument also has been raised and rejected. *E.g. McFarland v. State*, 928 S.W.2d 482 (Tex.Crim.App.1996); *Morris*, 940 S.W.2d at 614–15. In points of error nine through twelve, appellant attacks the constitutionality of Article 37.071 on grounds that the mitigation special issue is not subject to meaningful appellate review. This argument has been rejected. *E.g. Colella v. State*, 915 S.W.2d 834, 845 (Tex. Crim.App.1995); *McFarland*, 928 S.W.2d at 498. In point thirteen, appellant combines all of his prior arguments, asserting that the combined effect of the absence of burden of proof, the prohibition on informing jurors of the effect of their failure to reach an agreement, and the lack of meaningful appellant review together render Article 37.071 unconstitutional. Having rejected each of the constituent parts of appellant's arguments, it follows that the whole is rejected. Points of error seven through thirteen are overruled.

The judgment of the trial court is affirmed.

JOHNSON, J., concurred in the result.

MEYERS, J., filed a dissenting opinion.

MEYERS, J., *delivered this dissenting opinion.*

In point of error one appellant argues the evidence is legally insufficient to support a finding beyond a reasonable doubt that the testimony of the accomplice wit-

ness "tended to connect" appellant to the commission of the offense. The majority says a legal sufficiency review is inappropriate when considering such claim because the accomplice witness rule is a creature of statute alone:

> We decline appellant's invitation to impose legal and factual sufficiency standards upon a review of accomplice witness testimony under Article 38.14. The accomplice witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *See Malik v. State*, 953 S.W.2d 234, 240 n. 6 (Tex.Crim.App.1997). The burden established by the Legislature is that there be other evidence *tending to connect* the defendant with the offense.

*Majority opinion* at 462–63. But this Court has always superimposed on the accomplice witness rule elements derived from federal constitutional principles defining legal sufficiency review. For instance, this Court reviews an accomplice witness/insufficiency claim "in the light most favorable to the verdict." *See, e.g., Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997); *Knox v. State*, 934 S.W.2d 678, 683–87 (Tex.Crim.App.1996); *Colella v. State*, 915 S.W.2d 834, 836 (Tex.Crim.App.1995); *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994). This is not a

statutory requirement.[1] This is derived from *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We also ask whether "reasonable" or "rational" jurors could find the evidence to be sufficiently corroborative. *See, e.g., Hernandez v. State*, 939 S.W.2d 173 (Tex.Crim.App.1997)("rational jurors could conclude that this evidence sufficiently *tended* to connect ..."); *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994)("the issue before us is whether a reasonable jury could conclude that this non-accomplice evidence, taken as a whole, tended to connect ..."). This cannot be found in the accomplice witness provision. *See* n. 2, supra. It is an application of *Jackson*, supra. *Farris v. State*, 819 S.W.2d 490, 493–95 (Tex.Crim.App.1990)(in reviewing accomplice witness/insufficiency claim, we observed "our analysis of evidentiary sufficiency is guided, as always by the standard set out in *Jackson v. Virginia*"). In addition, as the majority notes, when the evidence is insufficient under an accomplice witness/insufficiency of the evidence claim, an acquittal rather than a retrial is in order. This is required by *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1977), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1977), pursuant to federal constitutional principles.[2]

---

1. The statute provides:

   A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

   Tex.Code Crim. Proc. art. 38.14.

2. In *Ex parte Reynolds*, 588 S.W.2d 900 (Tex.Crim.App.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980), the petitioner contended her second trial violated double jeopardy, after her first conviction was reversed for insufficient evidence to corroborate an accomplice witness. The State argued such finding under the accomplice witness rule is trial error and does not constitute insufficient evidence to support the conviction under *Burks* and *Greene*. We noted acquittal

was required under article 38.17, but further held such result was mandated in these circumstances under *Burks* and *Greene*:

> In this jurisdiction, when the evidence is insufficient to corroborate an accomplice witness, the jury cannot properly return any verdict except an acquittal. We therefore hold that *the Burks–Greene rule does apply to cases in which the evidence is insufficient to corroborate the testimony of the accomplice witness.*

588 S.W.2d at 902 (emphasis added). The emphasis remained on *Burks* and *Greene*, as the State continued to argue those decisions should not be given retrospective application. We disagreed, ultimately holding the petitioner was entitled to relief under *Burks* and *Greene*. *Id.* at 904; *see also Munoz v. State*, 853 S.W.2d 558, 560 (1993) ("If the non-accomplice evidence fails to connect appel-

A claim of insufficiency under the accomplice witness rule is *a challenge to the sufficiency of the evidence to support the defendant's conviction,* and thus ultimately governed by federal constitutional principles set forth in *Burks* and *Greene:*

> If the non-accomplice evidence fails to connect appellant to the offense, the evidence is insufficient to support appellant's conviction and an acquittal results. [citing *Reynolds, supra, Burks* and *Greene, supra*].... However, *a challenge to the sufficiency of the evidence to corroborate the testimony of an accomplice is a challenge to the sufficiency of the evidence to support the jury's verdict on guilt or innocence.*

*Munoz v. State,* 853 S.W.2d 558, 560 (Tex. Crim.App.1993); *see also Moron v. State,* 779 S.W.2d 399, 403 (Tex.Crim.App.1985) (holding State failed to present sufficient non-accomplice testimony that tended to connect defendant with offense and thereby corroborate accomplice witnesses, thus defendant entitled to acquittal and stating "Under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), also see *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), a determination by this Court that the evidence, as a matter of law, is insufficient to sustain the

trier of fact's verdict bars any retrial of [the defendant] for the same offense").

The majority suggests there is no connection between the accomplice witness rule and federal constitutional law because the rule is purely statutory.[3] Granted the rule is statutory, but it is a legislative recognition that there is "reasonable doubt" (a federal constitutional principle) to support a finding of guilt when the circumstances described in the rule exist (i.e., when there is only uncorroborated accomplice testimony to support the conviction):

> [The accomplice witness rule] essentially constitutes a legislative judgement that a reasonable doubt exists if the only evidence the State presents in satisfaction of its burden of proof is the testimony of an uncorroborated accomplice witness. In other words, as a matter of statutory law, an uncorroborated accomplice witness cannot by itself persuade us beyond a reasonable doubt—or, at least, even if it persuades a particular jury to that level of confidence, a conviction will not be permitted.

*Castillo v. State,* 913 S.W.2d 529, n. 3 (Tex.Crim.App.1995) (plurality opinion); *see also Munoz, supra.* By ignoring the caselaw discussed in this opinion, it seems the majority intends to overrule it *sub silentio.*[4]

---

lant to the offense, the evidence is insufficient to support appellant's conviction and an acquittal results" citing *Ex parte Reynolds,* supra, *Burks,* supra, and *Greene,* supra); *Cruz v. State,* 690 S.W.2d 246 (Tex.Crim.App.1985) (setting aside judgment and reforming to reflect acquittal for insufficient evidence to corroborate accomplice witness testimony, citing *Burks* and *Greene* ); *Castaneda v. State,* 682 S.W.2d 535, 538 (Tex.Crim.App.1984) (reversing judgments and remanding to trial court for entry of acquittal under *Reynolds, Burks* and *Greene); Walker v. State,* 615 S.W.2d 728, 733 (Tex.Crim.App.1981) (holding evidence insufficient to corroborate accomplice witness testimony and ordering judgment reformed to acquittal, stating, "This court is bound by the decisions of the United States Supreme Court in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v.*

*Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which applied *Burks* to the states. These decisions require that a defendant having once been placed in jeopardy and the evidence having been found insufficient, no further prosecution may be had.").

3. Most matters that are subject to or connected to a legal sufficiency review are statutorily imposed, such as culpable mental state, elements of an offense, statute of limitations, law of the parties, and the accomplice witness rule. This is because everything the State has to prove is decided by the legislature. And we have held that everything the State is required to prove (and therefore bears a burden of proof) must be in the jury charge so that it can be passed upon by a jury.

4. It's not really clear what the majority intends to do by its holding or how its holding

I cannot guess at the majority's motivation to today render an insufficiency of the evidence claim under the accomplice witness rule divorced from any federal constitutional principles. Without more explanation as to why this is now necessary in contrast to former caselaw, I decline to join the majority in revising the law on this issue.[5] With these remarks, I dissent.

will impact "review" of accomplice witness/insufficiency claims. And how will removing of accomplice witness/insufficiency claims from the purview of *Jackson* impact charge error regarding accomplice witness instructions? As the law stands, failure to include an accomplice witness instruction may be egregious error. *See Saunders v. State*, 817 S.W.2d 688 (Tex.Crim.App.1991)(holding defendant egregiously harmed where no charge given on accomplice testimony and evidence taken as whole did not have "strong tendency" to connect defendant with commission of offense).

5. As we have recognized, a claim of insufficiency of the evidence based on the accomplice witness rule is a challenge to the sufficiency of the evidence to convict. *Munoz*, 853 S.W.2d at 560. This is because a finding of sufficient corroborating evidence in a case involving an accomplice witness is a *precondition* to finding the evidence legally sufficient to convict. If the corroborating evidence is *insufficient*, then the evidence to convict is automatically legally insufficient. In other words, if the corroborating evidence does not "tend to connect," then a rational jury would have a reasonable doubt as to whether appellant committed the offense. Conversely, if the corroborating evidence is *sufficient*, then the legal sufficiency of the evidence to convict must still be measured by the appropriate standard.

The test for measuring the corroborative evidence goes like this:

The test for weighing the sufficiency of the corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *The non-accomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt.* Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment.

*Hernandez*, 939 S.W.2d at 176 (citations omitted) (emphasis added). Appellant confuses these concepts by superimposing on the accomplice witness rule a burden of proof beyond a reasonable doubt. He argues "When the evidence regarding appellant's statements and connection to the weapon is considered standing alone, as it must be, such evidence is simply inadequate to support a finding that appellant was connected to the commission of the offense beyond a reasonable doubt." This is wrong. The standard is "tend to connect" as shown above. This is not to say that satisfaction of the accomplice witness rule means the evidence is otherwise legally sufficient beyond a reasonable doubt. Just like sufficient proof of one element of the offense does not mean there is sufficient proof of the others. Appellant does not argue, however, the evidence is legally insufficient in any other respect.